IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>        Plaintiff,<br><br>v.<br><br>KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>        Defendant. | Civil Action No. 1:22-cv-1348 |

### COMPLAINT

Plaintiff Gilbert P. Hyatt, by and through his attorneys Baker & Hostetler LLP, alleges as follows:

### Nature of the Action

1. This is an action under the Patent Act, 35 U.S.C. § 145, to obtain a patent on patent application serial number 08/471,931 (Dkt. #550). For over two decades, Plaintiff Gilbert P. Hyatt has diligently prosecuted the '931 Application in the U.S. Patent and Trademark Office ("PTO"), as well as several hundred co-pending applications.

2. Rather than examine Mr. Hyatt's applications in good faith, the PTO has engaged in an unprecedented decades-long campaign to prevent Mr. Hyatt from obtaining further patents on his inventions. That campaign included placing his applications in an administrative purgatory that one federal judge referred to as "never-never land," ignoring applications until all potential terms on them expired, misrepresenting the PTO's intent to act on Mr. Hyatt's applications to federal court, "recycling" his applications when examiner rejections were reversed by administrative appeals, pulling allowed applications from issuance, and even representing in federal court that it intended to reject Mr. Hyatt's applications.

3. Congress has provided a cause of action for an aggrieved patent applicant to bring a civil action under 35 U.S.C. § 145 to obtain *de novo* consideration of his entitlement to a patent. Mr. Hyatt brings this action to obtain a patent in this application.

## Parties

4. Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued patents. Some of his patents and applications cover microcomputer structure, computer memory architecture, incremental processing, illumination devices, display devices, graphics systems, image processing, and sound and speech processing. He is 84 years of age and resides in Clark County, Nevada.

5. Defendant Katherine K. Vidal is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. She has overall responsibility for the administration and operation of the PTO, including the patent examination process. She is named as a defendant in her official capacity only.

## Jurisdiction and Venue

6. This action arises under the patent laws of the United States. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 145.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 35 U.S.C. § 145.

8. This Complaint is timely filed in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 90.3(a)(3)(i).

9. This matter has not been appealed to the United States Court of Appeals for the Federal Circuit.

## The '931 Application

10. Mr. Hyatt is the owner and inventor of U.S. Patent Application Serial No. 08/471,931 (Dkt. #550) (the "'931 Application").

11. The '931 Application has the benefit of the filing date of U.S. Patent Application Serial No. 05/101,881 (Dkt. #101) filed on December 28, 1970.

12. The '931 Application includes the following 24 claims: 377, 404, 405, 414, 416, 434, 451, 456, 457, 482, 493, 497, 498, 528, 537, 562, 567, 597, 612, 619, 623, 651, 657, and 663 (the "Subject Claims").

13. Mr. Hyatt is seeking issuance of a patent on the Subject Claims, but not on any other claims in the '931 Application.

14. The Subject Claims in the '931 Application are generally directed to systems or processes performed with an integrated circuit computer that includes (a) a program memory (not specified as a RAM), (b) an instruction address circuit, (c) an instruction access circuit, (d) a first restore circuit that generates a restore signal, (e) a second restore circuit that uses the restore signal to restore a computer instruction into the program memory, (f) an operand memory, (g) an operand address circuit, (h) an operand access circuit, and (i) an instruction execution circuit, which include: Using the restore circuits to restore into a program memory a computer instruction that was accessed from the program memory and generating pulse width information with a pulse width circuit based on a computer operand that is accessed from the operand memory with the operand access circuit and then processed by the instruction execution circuit using a computer instruction accessed from the program memory with the instruction access circuit, wherein, for some of the Subject Claims, the pulse width circuit is also part of the integrated circuit computer and, for other of the Subject Claims, the pulse width information is used both to control a machine and to generate feedback information. These lines of demarcation are further evidenced by the specific limitations of each Subject Claim. Each claim of the Subject Claims of the instant application has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications.

15. Mr. Hyatt filed the '931 Application on June 6, 1995. As such, this application is governed by the Transitional Rules under the Uruguay Round Agreements Act, Public Law No. 103-465 (1994) ("URAA"), including a provision the PTO implemented in 37

3

C.F.R. § 1.129(a) ("Rule 129(a)"), that limits to two the number of submissions that an applicant can file, to require limited further examination.

16. The '931 Application is deemed "special" under the PTO rules and must be "advanced out of turn." 37 C.F.R. § 1.102(a). It "continue[s] to be special throughout its entire course of prosecution in the [PTO], including appeal, if any, to the [Board]." MPEP § 708.01.

17. Mr. Hyatt has never made a dilatory filing in prosecuting the '931 Application. In contrast, the PTO suspended prosecution on at least nine occasions (4/17/2007, 12/20/2007, 9/23/2008, 4/14/2009, 1/7/2010, 8/2/2010, 3/29/2011, 10/13/2011, and 5/16/2012) and entered new grounds of rejections at least as late as October 2017.

18. In September 1995, Mr. Hyatt filed a preliminary amendment.

19. For a year, the PTO did not take any action on the merits. In September 1996, the PTO entered a two-way restriction requirement.

20. In December 1996, Mr. Hyatt timely responded.

21. In March 1997, the PTO sent a non-final office action rejecting all claims.

22. In September 1997, Mr. Hyatt timely responded.

23. In December 1997, the PTO sent a non-final office action rejecting all claims.

24. In May 1998, Mr. Hyatt timely responded.

25. In October 1998, the PTO sent a final office action rejecting all claims.

26. In September 1999, Mr. Hyatt filed a notice of appeal with a petition to revive the application, which the PTO granted the same month.

27. In March 2000, Mr. Hyatt made a submission under Rule 129(a) removing the finality of the office action.

28. In October 2000 and April 2003, Mr. Hyatt filed supplemental amendments.

29. For six years from Mr. Hyatt's Rule 129(a) submission, the PTO did not take any action on the merits. In March 2006, the PTO sent a set of information requests.

30. In July 2006, Mr. Hyatt timely responded, and after an interview with the PTO examiner and clarification of the information requests, Mr. Hyatt sent a revised response to the information requests in September 2006.

31. The PTO took no action on the merits for more than another seven years. Instead, the PTO suspended examination on nine different occasions and did not decide Mr. Hyatt's repeated petitions for action.

32. Rather than permit Mr. Hyatt's prosecution to proceed, the PTO reopened prosecution. In October 2013, the PTO sent a so-called "Requirement" action that, among other things, purported to require Mr. Hyatt to select 600 claims for examination in applications of the "550 Family" (each of which have the same disclosure as the disclosure in the '931 Application) and to identify any earlier embodiment that falls within the scope of any selected claim that Mr. Hyatt believed was entitled to a priority date earlier than December 27, 1989, or to provide a simple statement that the claim was described in the written description of application Serial No. 07/457,451 (Dkt. #327), filed on that date, excluding documents incorporated by reference.

33. In late 2013, the PTO sent similar Requirements in nearly all of Mr. Hyatt's applications.

34. In March 2014, Mr. Hyatt timely responded to the Requirements.

35. In December 2014, the PTO sent a non-final office action rejecting all claims and including new grounds of rejection. The PTO acknowledged that Mr. Hyatt's response was bona fide.

36. In June 2015, Mr. Hyatt timely responded.

37. In January 2016, the PTO sent a final office action rejecting all claims. The PTO acknowledged that Mr. Hyatt's response was bona fide.

38. In July 2016, Mr. Hyatt timely filed a notice of appeal, and in December 2016, Mr. Hyatt made a second submission under Rule 129(a) removing the finality of the office action.

39. In October 2017, the PTO sent a non-final office action rejecting all claims. The PTO acknowledged that Mr. Hyatt's response was bona fide.

40. In April 2018, Mr. Hyatt timely responded.

41. In September 2018, the PTO sent a final office action rejecting all claims.

42. In February 2019, Mr. Hyatt timely filed a notice of appeal, and in September 2019, Mr. Hyatt filed his appeal brief.

43. In December 2020, the PTO sent an Examiner's Answer.

44. In May 2021, Mr. Hyatt timely filed a reply brief.

45. After another year and a half, on September 26, 2022, the Board sent its decision affirming the rejections of each of the Subject Claims on at least one ground of rejection.

## The Written Description Rejections

46. The PTO rejected Subject Claims 416 and 619 for alleged lack of written description within the meaning of pre-AIA 35 U.S.C. § 112, first paragraph.

47. The disclosure of the '931 Application describes the claimed subject matter of Subject Claims 416 and 619 in such manner that a person of ordinary skill in the relevant field of art would understand that Mr. Hyatt had possession of the invention claimed in that Subject Claim as of the '931 Application's effective filing date.

48. The rejection of Subject Claims 416 and 619 under pre-AIA 35 U.S.C. § 112, for alleged lack of written description under pre-AIA 35 U.S.C. § 112, first paragraph, is erroneous.

## The Prosecution Laches Rejection

49. The PTO rejected the Subject Claims and held the '931 Application entirely forfeited under the equitable doctrine of prosecution laches.

50. The rejection for prosecution laches is erroneous.

51. The prosecution laches rejection is erroneous because prosecution laches is not a valid ground of rejection under the Patent Act, particularly for the '931 Application, which is subject to the two-submission limit of the URAA Transitional Rules.

52. The prosecution laches rejection is erroneous because Mr. Hyatt did not delay prosecution.

53. The prosecution laches rejection is erroneous because any delay in the prosecution is attributable to the actions or inaction of the PTO.

54. The prosecution laches rejection is erroneous because any delay in prosecution fairly attributed to Mr. Hyatt is not unreasonable and not unexplained.

55. The prosecution laches rejection is erroneous because Mr. Hyatt's prosecution actions did not constitute an egregious misuse of the statutory patent system.

56. The prosecution laches rejection is erroneous because the PTO failed to warn Mr. Hyatt in advance of any specific actions or inaction of the risk of forfeiture of his rights under the Patent Act in or as to the '931 Application and failed to warn Mr. Hyatt of what specific actions he should take or not take to avoid forfeiture.

57. The prosecution laches rejection is erroneous because the PTO failed to make a sufficient showing of intervening rights.

58. The prosecution laches rejection is erroneous because the PTO unreasonably delayed in asserting prosecution laches after decades of prosecution activity by Mr. Hyatt, prejudicing Mr. Hyatt, who has invested significant amounts of time and money in the prosecution of the '931 Application.

59. The prosecution laches rejection is erroneous because the PTO has unclean hands.

## The Undue Multiplicity Rejections

60. The PTO rejected all of the Subject Claims under pre-AIA 35 U.S.C. § 112, second paragraph, as allegedly failing to distinctly claim the subject matter that Mr. Hyatt regards as the invention under the doctrine of undue multiplicity.

61. Each of the Subject Claims informs with reasonable certainty about the scope of each claim.

62. Each of the Subject Claims distinctly claims the subject matter that Mr. Hyatt regards as the invention.

63. The Subject Claims are distinguished from all claims that Mr. Hyatt seeks to pursue in all of his other applications because each of the Subject Claims are generally directed to systems or processes performed with an integrated circuit computer that includes (a) a program memory (not specified as a RAM), (b) an instruction address circuit, (c) an instruction access circuit, (d) a first restore circuit that generates a restore signal, (e) a second restore circuit that uses the restore signal to restore a computer instruction into the program memory, (f) an operand memory, (g) an operand address circuit, (h) an operand access circuit, and (i) an instruction execution circuit, which include: Using the restore circuits to restore into a program memory a computer instruction that was accessed from the program memory and generating pulse width information with a pulse width circuit based on a computer operand that is accessed from the operand memory with the operand access circuit and then processed by the instruction execution circuit using a computer instruction accessed from the program memory with the instruction access circuit, wherein, for some of the Subject Claims, the pulse width circuit is also part of the integrated circuit computer and, for other of the Subject Claims, the pulse width information is used both to control a machine and to generate feedback information, whereas Mr. Hyatt does not seek to patent any claims that meet the same description in any other of his applications. Each of the Subject Claims contains further specific limitations. Each of the Subject Claims has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. Each of the Subject Claims of the '931 Application has ascertainable differences in scope from each other.

64. The rejection of the Subject Claims as unduly multiplied under pre-AIA 35 U.S.C. § 112, second paragraph, is erroneous.

### The Obviousness Rejections

65. The PTO rejected certain of the Subject Claims under pre-AIA 35 U.S.C. § 103 as allegedly being obvious over certain references.

66. The PTO rejected Subject Claims 416 and 619 as obvious over Haney (U.S. Patent No. 3,702,988), Middleditch (U.S. Patent No. 3,699,317), Rubinstein (U.S. Patent No. 3,599,180), and Boysel (*Cutting System Costs with MOS*, ELECTRONICS 105–07 (1969)).

67. Subject Claims 416 and 619 would not have been obvious to a person having ordinary skill in the relevant field of art as of the effective filing date of the '931 Application, from the above-identified references or their combinations..

68. The rejections under pre-AIA 35 U.S.C. § 103 are erroneous.

### Objections

69. In addition to rejecting the Subject Claims, the PTO has objected to the specification.

70. All objections to the specification, and any objections PTO to the drawings, are erroneous because the specification and drawings comply with the requirements of law.

### Count I: Issuance of a Patent

71. The above paragraphs are hereby incorporated by reference as if set forth fully herein.

72. Patent Act Section 145 provides a cause of action for a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board to obtain a judgment that the "applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board." 35 U.S.C. § 145.

73. Each of the Subject Claims of the '931 Application was involved in the September 26, 2022, decision of the Patent Trial and Appeal Board.

74. Each of the Subject Claims of the '931 Application is patentable.

75. Each of the Subject Claims of the '931 Application satisfies all applicable legal requirements for issuance of a patent.

76. Mr. Hyatt is entitled to receive a patent on the Subject Claims in the '931 Application.

### **Prayer for Relief**

WHEREFORE, Plaintiff respectfully asks that this Court enter Judgment in his favor and that he be granted the following relief:

A. A decree that Mr. Hyatt is entitled to receive a patent for the '931 Application on the Subject Claims;

B. A decree that the rejections of the Subject Claims of the '931 Application are erroneous;

C. A decree authorizing the Director of the United States Patent and Trademark Office to issue a patent for the subject matter claimed in the Subject Claims of the '931 Application;

D. A decree that the specification and drawings of the '931 Application comply with the requirements of law; and

E. Such other and further relief as the Court may deem just and proper.

Dated: November 28, 2022               Respectfully submitted,

/s/ Mark W. DeLaquil
MARK W. DELAQUIL (VA Bar No. 68088)
ANDREW M. GROSSMAN*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1527
agrossman@bakerlaw.com
mdelaquil@bakerlaw.com

*Attorneys for Gilbert P. Hyatt*

* Application for admission *pro hac vice* forthcoming